## Chesapeake & Ohio Railway Company v. Lauhorn.

(Decided May 29, 1914.)

### Appeal from Floyd Circuit Court.

Railroads—Waiting Rooms—Where Required to Maintain.—Under Section 784 of the Kentucky Statutes, a railroad company is not required to keep and maintain waiting rooms for passengers at flag stations during the night time; it must, however, keep

its waiting room for passengers open at a passenger station or depot for all trains that stop there regularly.

HARKINS & HARKINS and WORTHINGTON, COCHRAN & BROWNING for appellant.

MAY & MAY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is an appeal from a judgment obtained by the appellee for $200.00 damages, for excluding him from the appellant's passenger station at Harold Station, while he was waiting for one of appellant's passenger trains, on January 4th, 1912.

Harold is a small village of perhaps half a dozen houses, besides appellant's station and depot which contains a ticket office, telegraph office, express, freight, and baggage rooms.

Desiring to go to Pikeville, appellee went to the station about five o'clock in the afternoon, and finding it open he left his baggage in the waiting room while he went out to get lunch at a store across the road. He was absent about half an hour, and when he returned to the station he found the passenger waiting room locked; and as his baggage was locked therein, appellee waited on the outside for the return of Flannery, the ticket agent, who also acted as telegraph operator.

Flannery returned about seven o'clock, but told Lauhorn that the office was closed for the rest of the day, and could not be longer used as a waiting room. Lauhorn remonstrated, calling Flannery's attention to the fact that it was a very cold day, with a strong wind blowing, amounting almost to a blizzard, and that as there was no hotel in the town or other public place where he could stop, it would be a great hardship to require him to wait out of doors in the weather.

The train upon which Lauhorn intended to go to Pikeville was due at Harold Station at 8:20 P. M., but Flannery, by the use of the wire, ascertained that it was an hour late and so informed Lauhorn. Lauhorn offered to pay Flannery for his time if he would remain with him at the station until the train arrived, but Flannery said his office hours were over at four o'clock, and declined to remain longer; and at about 7:15 P. M. he required Lauhorn to leave the waiting room, which Flannery locked and then departed. Lauhorn and two other

men who were likewise waiting, made a fire on the vacant lot nearby, but the wind was so strong as to make it dangerous; and they were compelled under the remonstrances of the neighbors, to extinguish the fire.

About eight o'clock Lauhorn learned there was a boarding house in the neighborhood at which accommodations could be had; and being cold and thoroughly chilled, he went to the boarding house, took a bed, and remained there for the night. The next day he had a cold, and was ill four or five days from the exposure. He brought this action for the physical suffering and loss of time from his business as a traveling salesman.

The company relied upon the fact that Harold was not a station at which the 8:20 train regularly stopped, but was only a flag station at which it was not required to keep the passenger station open during the night.

Section 784 of the Kentucky Statutes, containing general provisions concerning railroad companies, provides, in part, as follows:

"All companies shall keep their ticket offices open for the sale of tickets at least thirty minutes immediately preceding the schedule time of departure of all passenger trains from every regular passenger depot from which such trains start, or at which they regularly stop; and shall open the waiting room for passengers at the same time as the ticket office, and keep it open and comfortably warm in cold weather until the train departs."

This statute does not require railroads to keep and maintain waiting rooms open for passengers at flag stations during the night-time. L. & N. R. R. Co. v. Commonwealth, 102 Ky., 300, 53 L. R. A., 149; Sandifer's Admr. v. L. & N. R. R. Co., 28 Ky. L. R., 465.

It does, however, require a railroad company to keep its waiting room for passengers open at a passenger station or depot for a train that stops regularly at such station.

Appellee's right to recover, therefore, depended upon whether Harold Station was a station at which the train would regularly stop on this occasion, or whether it was merely a flag station; and in submitting the case to the jury the court properly predicated appellee's right to recover upon that fact.

There is no complaint about the instructions; appellant merely insists that it was entitled to a peremptory instruction because the evidence clearly proves, as it

claims, that Harold Station was a flag station. This contention of appellant, however, is not sustained by the proof; indeed, the weight of the proof upon that issue is with the appellee. The ordinary folders that were given to passengers failed to show that Harold Station was a flag station; while the official time table made for the exclusive and private use of the train operatives seems to have shown that Harold Station was a flag station only.

Flannery, the agent, testified that the train in question always stopped at Harold Station, and that a short time before January, 1912, the appellant had caused Harold Station to be designated as a flag station on account of two prosecutions against it, in a magistrate's court, for violating the law applicable to regular stations. The weight of the evidence is that Harold Station was a regular passenger station. As above stated, it contained all the departments of a regular station, and in addition did a business of between thirteen thousand and fourteen thousand dollars per month.

Finding no error in the record the judgment is affirmed.